# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| KLEE MORRISON, § | | |
| (TDCJ No. 11556-059) § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 4:20-cv-00222-O |
| § | | |
| ERIC D. WILSON (Warden) et al., § | | |
| § | | |
| Defendants. § | | |

## OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss (ECF No. 19), filed June 1, 2021; Plaintiff's response thereto (ECF No. 22), filed June 22, 2021; Plaintiff's Request for Appointment of Counsel (ECF No. 21), filed June 22, 2021; and Plaintiff's Motion to Suspend Filing Fees (ECF No. 22), filed June 22, 2021. Having considered the pleadings, legal briefing, record, and applicable law, and for the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 19); **DENIES** Plaintiff's Request for Appointment of Counsel (ECF No. 21); and **DENIES** Plaintiff's Motion to Suspend Filing Fees (ECF No. 22).

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 9, 2020, *pro se* Plaintiff Klee Morrison ("Morrison"), who was incarcerated with the federal Bureau of Prisons ("BOP") at Federal Medical Center, Fort Worth, Texas ("FMC-Fort Worth"), filed this civil rights complaint seeking monetary and injunctive relief. Pl.'s Compl., ECF No. 1. On July 27, 2020, Morrison filed an Amended Complaint, the live pleading. Pl.'s Am.

Compl., ECF No. 7. Insofar as he seeks monetary relief, this action is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1]

Morrison has been permitted to proceed *in forma pauperis*. Because Morrison is proceeding *pro se* in this matter, the Court liberally construes his pleadings. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Haines v. Kerner*, 404 U.S. 519 (1972).[2]

In his Amended Complaint, Morrison alleges he was being housed in a "zero ventilation room over 200% rated capacity" at FMC-Fort Worth. Am. Compl. ¶ IV, ECF No. 7. He further alleges prison authorities transferred him into this room "for unwarranted punishment" and that the room was "used for torture," allegedly as a punitive or retaliatory measure in response to Morrison's failure to keep his prior cell clean. *Id.* ¶¶ IV, V, ECF No. 7. Morrison names as defendants the former warden of FMC-Fort Worth, Eric D. Wilson ("Wilson"), and B.P. Waller ("Waller"), whom he identifies as a "unit manager" of the housing unit. *Id.* ¶ IV, ECF No. 7. With respect to the relief he seeks from the Court, Morrison asserts that he "want[s] people responsible

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (holding that federal officers acting under color of law are liable for damages for certain violations of the United States Constitution).

[2] The court is mindful of the extent to which it must go in construing the pleadings of a non-lawyer but must also remember the limits of liberal construction. Morrison's *pro se* status does not exempt him from the requirement that he comply with relevant rules of procedural and substantive law, including Rule 8's pleading requirements. *See Hulsey v. Tex.*, 929 F.2d 168, 171 (5th Cir. 1991); *Boswell v. Honorable Governor of Texas*, 138 F. Supp. 2d 782, 785 (N.D. Tex. 2000) (Mahon, J.) ("While a complaint need not outline all the elements of a claim, the complaint must be comprehensible and specific enough to draw the inference that the elements exist."). The court does not excuse the failure to make any argument; nor does the requirement for liberally construing a petition give the court license to raise issues that the *pro se* litigant has omitted. *See, e.g.*, *Johnson v. Quarterman*, 479 F.3d 358 (5th Cir. 2007) (*Pro se* briefs are entitled to liberal construction, but even *pro se* litigants must brief arguments in order to preserve them.); *Smith v. CVS Caremark Corp.*, 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) (Boyle, J.) (But "liberal construction does not require that the Court . . . create causes of action where there are none[.]").

for this torture fired and compensation for the suffering, and long term effects of living in these conditions." *Id.* ¶ VI, ECF No. 7. In addition, in an attachment to his Amended Complaint, he states that he wishes to be "moved to a room with ventil[]ation." Ex. A to Am. Comp., ECF No. 7.

After screening his Amended Complaint pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), the Court permitted Morrison to obtain service of his claims against Defendants. *See* Order Regarding Completion and Service of Summons (ECF No. 12).

On June 1, 2021, Defendants moved to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. Dismiss, ECF No. 19. On June 22, 2021, Morrison filed correspondence which the Court liberally construed as Plaintiff's response to Defendants' Motion to Dismiss. *See* Pl.'s Resp., ECF No. 22. He also filed a Request for Appointment of Counsel (ECF No. 21) and a Motion to Suspend Filing Fees (ECF No. 22).

## II. LEGAL STANDARDS

### A. Case or Controversy Requirement

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ). The court cannot assume that it has jurisdiction; rather, "the basis upon which jurisdiction depends must be alleged affirmatively and

distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n.2 (5th Cir. 1983)).

Article III of the United States Constitution limits federal jurisdiction to actual "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. "[C]ourts may not decide cases that since have become moot because there is no longer a live case or controversy." *Tex. v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019). The requirement that there be a case-or-controversy "subsists through all stages of federal judicial proceedings, trial and appellate. [I]t is not enough that a dispute was very much alive when suit was filed; the parties must continue to have a personal stake in the ultimate disposition of the lawsuit." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal citation and quotation marks omitted). A case becomes moot when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).

With mootness, a plaintiff must demonstrate that he has a personal stake in the outcome of the litigation, and it continues through "all stages of review, not merely at the time the complaint is filed. A case that becomes moot at any point during the proceedings is . . . outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, __ U.S. __, 138 S. Ct. 1532, 1537 (2018) (citation and quotation marks omitted).

**B.     Fed. R. Civ. P. 12(b)(1)**

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). When a motion to dismiss for lack of subject matter jurisdiction is supported by evidence, it is considered a factual attack, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court is therefore "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In response to a factual attack, the plaintiff, as the party seeking to invoke jurisdiction, has the burden of submitting evidence and proving by a preponderance of the evidence the existence of subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Regardless of whether the attack is facial or factual, the party asserting federal jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

Here, Defendants raise a factual challenge to the Court's subject matter jurisdiction.

**C.     Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil

5

Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## III. ANALYSIS

### A. Defendants' Motion to Dismiss

#### 1. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants raise a factual challenge to the subject matter jurisdiction of this Court. They contend Morrison's request for injunctive relief is moot because he is no longer incarcerated at FMC-Fort Worth. For the reasons that follow, the Court agrees that it lacks subject matter jurisdiction over Morrison's request for injunctive relief and will dismiss his claims seeking injunctive relief.

The undisputed evidence shows that on or about March 11, 2021, Morrison was transferred out of FMC-Fort Worth and now resides at a halfway house in the Phoenix, Arizona area in anticipation of his upcoming release upon the completion of his sentence, which release date is currently projected to be September 1, 2021. *See* ECF No. 15 (change of address notice with Arizona address); *see also* Fed. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (search for Klee Morrison as of June 30, 2021, shows current location in Phoenix and a projected release date of September 1, 2021).

When an inmate challenges the conditions of his confinement, his transfer from the allegedly offending institution generally renders moot any claims for non-monetary relief. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (citations omitted). These non-monetary claims may avoid becoming moot only when there is a "demonstrated probability" or a "reasonable

7

expectation" that the inmate will be returned to the institution in question. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). This is a narrow exception; the mere possibility of a later transfer back to the facility is too speculative to keep a moot claim alive. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (citations omitted).

In this case, Morrison is nearing the completion of his sentence and the Court concludes that he has demonstrated no probability that he will be returned to FMC-Fort Worth in the future. For these reasons, Morrison has failed to meet his burden of proof to show a live case or controversy and his request for injunctive relief pertaining to his conditions of confinement at FMC-Fort Worth is, therefore, moot. Accordingly, the Court will grant Defendants' Motion to Dismiss Morrison's claims for injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(1) and will dismiss these claims as moot.

### 2. Rule 12(b)(6)

Defendants moves to dismiss Morrison's claims for compensatory damages pursuant to Federal Rule of Civil Procedure 12(b)(6) on numerous alternative grounds including, without limitation, that his claims (i) are not cognizable under *Bivens*; and (ii) are barred by the Prison Litigation Reform Act because he has not pleaded a physical injury. Defs.' Mot. Dismiss 4, ECF No. 19. Additionally, with respect to Morrison's claims against Wilson, Defendants contend dismissal is required because Morrison has failed to adequately allege that Wilson was personally involved in the alleged constitutional violation or in implementing a policy that resulted in the alleged violation.[3] The Court addresses these arguments in turn.

---

[3] Defendants, in the alternative, also contend dismissal is required because Morrison has failed to overcome Defendants' entitlement to qualified immunity. Because the Court concludes that Defendants' motion to dismiss should be granted on other grounds set forth in their motion, it need not reach this argument.

8

### a. *Bivens* does not Extend to Morrison's Claims for Monetary Relief against Defendants Sued in their Individual Capacities

Morrison seeks monetary relief under *Bivens* based on alleged constitutional violations by federal actors. Given the context of this case, however, as Defendants correctly argue, his *Bivens* claims cannot succeed and must be dismissed.[4]

*Bivens*, unlike 42 U.S.C. § 1983 (applicable to state actors), is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

The United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979),

---

[4] Insofar as Morrison may be seeking monetary damages against Defendants in their official capacities, this claim is barred by sovereign immunity. Lawsuits against federal employees in their official capacities are treated as lawsuits against the United States. *See Ischy v. Miles*, 75 F. App'x 257, 258 (5th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Suits against the United States are generally barred by sovereign immunity. *Id.* (citing *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999)). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Since federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). Plaintiff has the burden to show an "unequivocal waiver of sovereign immunity." *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009). He has not pleaded any waiver. In addition, the government has not waived sovereign immunity for claims for money damages based on alleged violations of the Constitution. *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. Unit B 1982); *Brown v. United States*, 653 F.2d 196, 199 (5th Cir. Unit A 1981).

holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abassi*, 137 S. Ct. at 1854-55; *see id.* at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."). Further, the Supreme Court "has 'never held that *Bivens* extends to First Amendment claims.'" *Butler v. S. Porter*, No. 19-30029, __ F.3d __, 2021 WL 2221463, at *3 (5th Cir. June 2, 2021) (quoting *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)).

The Supreme Court has developed a two-part test to determine if a *Bivens* claim may proceed. *Abbasi*, 137 S. Ct. 1843, 1843 (2017). Because *Bivens* is a judicially crafted remedy, and not a statutory one like 42 U.S.C. § 1983, courts should consider (1) whether the case "presents a new context" and, if it does, (2) whether "there are any special factors that counsel hesitation about granting the extension." *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (finding "the *Bivens* question is antecedent" to other issues in a case, including qualified immunity (internal quotations and citations omitted)). The Supreme Court has also strongly counseled against extending *Bivens* to new contexts, *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020), and repeatedly held that such extensions are "a 'disfavored' judicial activity." *Abassi*, 137 S. Ct. at 1857; *see also Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an 'ancient regime' that freely implied rights of action" and that "ended long ago.") (emphasis in original), *cert. denied*, 2021 WL 2044553, at *1 (U.S. May 24, 2021).

### 1. Morrison's Claims Represent a New Bivens Context

For purposes of implying a damages remedy under the Constitution, a proposed *Bivens* claim is "new" if the "case is different in a meaningful way from previous *Bivens* cases" in which the Supreme Court had recognized a *Bivens* remedy. *Abassi*, 137 S. Ct. at 1859. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad" . . . "because 'even a modest extension' of the *Bivens* trilogy 'is still an extension.'" *Oliva*, 973 F.3d at 442 (citations omitted). The types of differences that are meaningful enough to make the context "new" are myriad and include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abassi*, 137 S. Ct. at 1860. Moreover, "it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment in the same way.'" *Oliva*, 973 F.3d at 442 (quoting *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).

Morrison requests damages against federal defendants based on his conditions of confinement and alleges violations of the Eighth Amendment. In addition, he appears to be alleging a violation of the First Amendment, asserting that his transfer to a different cell was retaliatory. Although his First Amendment claim is dubious, as he alleges that he was moved from his cell because he failed to keep his prior cell clean, as opposed to any "First Amendment" activity (*see* Am. Compl. ¶ V, ECF No. 7), the Court will broadly interpret his allegations as seeking to raise claims for violations of both the Eighth and First Amendments.

Morrison asserts a *Bivens* claim against Defendants under the Eighth Amendment. He alleges that his conditions of confinement amount to cruel and unusual punishment. Because the Court concludes this case differs significantly from the *Bivens* trilogy of actions sanctioned by the Supreme Court, the Court determines that Morrison's claims arise in a new context. *Compare Bivens*, 403 U.S. at 389-90 (manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment); *Carlson*, 446 U.S. at 16-18 (recognizing a *Bivens* cause of action under the Eighth Amendment for a deceased prisoner who was deprived medical attention by prison officers who knew of his serious medical condition); *Davis*, 442 U.S. at 229-34 (recognizing a *Bivens* cause of action under the Due Process Clause of the Fifth Amendment for a female employee who was terminated based on her gender).

The Court reaches this determination for several reasons. First, Morrison does not allege Fourth or Fifth Amendment violations and he makes no factual allegations that would support such claims. As such, his case is different from *Bivens* and *Davis*. Although Morrison premises his claims on alleged violations of the Eighth Amendment, as did the plaintiff in *Carlson*, his case differs significantly from *Carlson*. In *Carlson*, the Court recognized a *Bivens* cause of action under the Eighth Amendment in a case involving an alleged failure to provide medical treatment for an inmate with a "serious[ ]" and "Chronic Asthmatic Condition" known to prison officials. *Carlson*, 446 U.S. at 16 n.1. Morrison's allegations do not concern the deprivation of medical care but rather his conditions of confinement at FMC-Fort Worth, including allegations that he was housed in a "zero ventilation room." Am. Compl. ¶ IV, ECF No. 7. As such, Morrison's claim clearly represents a new *Bivens* context. Any other conclusion is foreclosed by *Abassi*, as the Court there confined *Carlson* to its facts. Relying in part on its holding in *Correctional Services Corp. v.*

*Malesko*, 534 U.S. 61 (2001), the *Abassi* Court held that *Carlson* had only recognized an implied damages remedy under the Eighth Amendment for "failure to provide medical treatment." *Abassi*, 137 S. Ct. at 1859, 1865; *see also Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) ("Schwarz's Eighth Amendment claim regarding unsanitary cell conditions presents a new *Bivens* context because Schwarz does not allege a failure to treat a serious medical condition, which was the issue in *Carlson*. Rather the basis of Schwarz's claim—a nonfunctioning toilet—resembles the conditions of [] confinement claim the Supreme Court rejected in *Abbasi*." (citations omitted)).

Further, with respect to Morrison's First Amendment claim, assuming he has even pleaded one, as previously stated, the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Butler v. Porter*, __ F.3d __, 2021 WL 2221463, at *3 (5th Cir. June 2, 2021) (declining to extend *Bivens* to a prisoner's First Amendment retaliation claim); *Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 686 (5th Cir. 2021) (noting that the "Supreme Court has not only never recognized a *Bivens* cause of action under the First Amendment, but also once rejected a First Amendment retaliation *Bivens* claim for federal employees" and declining to extend *Bivens* to a prisoner's First Amendment claim that he was subjected to spoiled and contaminated food as a form of retaliation by prison officials). In short, none of the three cases in which the Supreme Court recognized a *Bivens* remedy has sufficient overlap or commonality with the instant case. As such, this "new" designation is warranted because *Bivens* remedies, as previously recognized, arose under different constitutional amendments and/or factually different circumstances.

As the Court concludes that Morrison's claims represent a "new" *Bivens* context, it proceeds to the second step of the analysis.

## 2. Special Factors Counsel Hesitation in Extending New Bivens Remedy Here

When a claim arises in a different context from one of the three Supreme-Court-recognized *Bivens* claims, the Court turns to whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (cleaned up). In such a case, "a *Bivens* remedy will not be available." *Id.*

The "special factors" inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. These factors include whether Congress has legislated on the right at issue and whether alternative remedies exist for protecting that right. *Id.* at 1858, 1862. Courts also consider separation-of-powers concerns. *Hernandez*, 140 S. Ct. at 743.

Three special factors cause the Court to hesitate here. First, congressional legislation already exists in this area. Congress addressed the issue of prisoners' constitutional claims in the PLRA, 42 U.S.C. § 1997e, which "does not provide for a standalone damages remedy against federal jailers." *Abbasi*, 137 S. Ct. at 1865. This factor supports the conclusion that Congress considered and rejected a federal damages remedy for claims like Morrison's.

Second, the Federal Tort Claims Act ("FTCA") and the Administrative Remedy Program operated by the Federal Bureau of Prisons provide a potential, alternative remedy, and militate against expansion of a *Bivens* remedy. *See Abassi*, 137 S. Ct. at 1865 ("the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."). The FTCA waives the Government's sovereign immunity from tort claims that arise from the negligent or wrongful acts or omissions of federal employees in the course of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(b)(1). Additionally, the and the availability of a claim for injunctive relief against prison

officials in their official capacities serve as two such alternative remedial structures for conditions-of-confinement claims.

Third, as the Fifth Circuit recently stated in *Butler*, "separation-of-powers concerns counsel against extending *Bivens*." *Butler*, No. 19-30029, 2021 WL 2221463, at *4. The Supreme Court has recognized that

> [r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987), *superseded by statute on other grounds*, 42 U.S.C. § 2000cc-1(a), *as recognized in Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)). As in *Butler*, the Court concludes that extending *Bivens* to claims like Plaintiff's "would run afoul of this restraint and risk improperly entangling courts in matters committed to other branches. Indeed, because of the very complex nature of managing federal prisons, such a holding would substantially impinge on the executive branch, in addition to the legislative branch." *Id.* at *5. "Such a result would be a paradigmatic violation of separation-of-powers principles." *Id.*

For these reasons, the *Bivens* claims that Morrison asserts against Defendants for monetary relief must be dismissed. Accordingly, the Court will grant Defendants' Motion to Dismiss Morrison's *Bivens* claims for monetary relief against Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) and will dismiss these claims with prejudice.

### b. Physical Injury Requirement

Defendants, in the alternative, move to dismiss Morrison's claims for compensatory damages because the "amended complaint is devoid of any well-pleaded facts showing that

Morrison actually sustained a physical injury as a result of the allegedly deficient conditions of confinement." Defs.' Mot. Dismiss 12, ECF No. 19. For the reasons that follow, after considering the legal briefing, pleadings, and applicable law, the Court agrees with Defendants that because Morrison pleads no physical injury in his Amended Complaint, the recovery of compensatory damages for emotional or mental injuries allegedly suffered is precluded.

Title 42 U.S.C. § 1997e(e) provides that "No Federal Civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." This requirement "applies to all federal civil actions in which a prisoner alleges a constitutional violation," including First Amendment and RLUIPA claims. *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005); *see also Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 603, 605-06 (5th Cir. 2008) (affirming district court's grant of summary judgment in favor of defendants, where prisoner only sought compensatory damages and did not allege any physical injury regarding his claim that defendants violated his First Amendment right to freely exercise his religion). The application of § 1997e(e) is based on "the relief sought, and not the underlying substantive violation." *Geiger*, 404 F.3d at 375; *see also Mayfield*, 529 F.3d at 605 ("We have held that the application of [§ 1997e(e)] . . . turns on the relief sought by a prisoner, and that it prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged."). Section 1997e(e) does not bar claims for nominal and punitive damages. *See Pomier v. Leonard*, 532 F. App'x 553 (5th Cir. 2013); *Hutchins v. McDaniels*, 512 F.3d 193, 196-98 (5th Cir. 2007).

The Court has scoured the Amended Complaint (ECF No. 7) and its attachment, and even liberally construed, concludes that Morrison never sought punitive or nominal damages.

16

In short, under Fifth Circuit law, Morrison's failure to allege a physical injury requires the Court to dismiss his claims for compensatory damages against Defendants. Accordingly, in the alternative, the Court will grant Defendants' Motion to Dismiss Morrison's *Bivens* claims for monetary relief against Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) and will dismiss these claims with prejudice for failure to plead a physical injury.

    c.  **No *Respondeat Superior***

In the alternative, Defendants move to dismiss Morrison's *Bivens* claims against Wilson for failure to allege Wilson was personally involved in any constitutional violations. *See* Defs.' Mot. Dismiss 15, ECF No. 17. For the reasons that follow, the Court concludes that Morrison's *Bivens* claims against Wilson, insofar as he has any, must be dismissed.

To assert a claim of a constitutional right under the *Bivens* theory of recovery, a plaintiff must first demonstrate that the defendant was personally involved in the alleged violation. *Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 832-33 (5th Cir. 2004); *see also Iqbal*, 556 U.S. at 683 (noting that defendants "cannot be held liable unless they themselves acted"). "Because there is no doctrine of respondeat superior under *Bivens*, supervisors cannot be liable solely on that basis." *Allen v. Tuberra*, No. 4:13-CV-619-A, 2013 WL 5943120, at *3 (N.D. Tex. Nov. 6, 2013) (McBryde, J.) (dismissing a *Bivens* claim against a warden where it was not alleged that the warden was personally involved in the alleged constitutional violation or in implementing a policy that itself resulted in the alleged violation) (citation omitted)).

Accordingly, in the alternative, the Court will grant Defendants' Motion to Dismiss Morrison's *Bivens* claims against Wilson for compensatory damages pursuant to Federal Rule of

Civil Procedure 12(b)(6) because he has failed to allege Wilson was personally involved in any alleged constitutional violations.

### B. Morrison's Request for Appointment of Counsel

Morrison requests that the Court appoint him counsel. On December 4, 2020, the Court denied without prejudice a previous request for counsel filed by Morrison. *See* Order, ECF No. 10. The Court incorporates that Order by reference as if fully set forth herein. In that Order, the Court stated that it would consider his motion again if he presented "additional facts showing circumstances that establish the Court should exercise its discretion to appoint counsel." *Id.* at 1. As he has failed to provide additional facts to demonstrate that his case presents "exceptional circumstances" warranting the appointment of counsel, *see Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982), for the reasons previously stated in its December 4, 2020 Order (ECF No. 10), and herein, the Court will deny Morrison's Request for Appointment of Counsel.

### C. Morrison's Motion to Suspend Filing Fees

Morrison also requests that the Court suspend payment of fees because he lacks the funds to pay them. The Prison Litigation Reform Act ("PLRA") requires prisoners seeking to bring civil actions to pay an initial partial filing fee. *See* 28 U.S.C. § 1915(b). The PLRA further requires prisoners thereafter to pay the remainder of the $350.00 filing fee. *Id.*; 28 U.S.C. § 1914(a).

On December 4, 2020, the Court issued a filing fee order granting Morrison's request to proceed *in forma pauperis*. The Court assessed an initial fee of $50 and directed the agency having custody of Morrison to deduct 20% of each deposit made to his inmate trust account and forward payments to the Court on a regular basis provided the account exceeds $10. *See* Filing Fee Order, ECF No. 11. In the event the account is below $10, no payment need be made. *Id.*

Given the mandate of the PLRA, absent more, the Court will deny Morrison's Motion to Suspend Filing Fees.

## IV. LEAVE TO AMEND

Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). However, the Court is not required to grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Id*.

For the reasons outlined here, Morrison's claims against Defendants are fatally infirm. In addition, he has already had the opportunity to amend his Complaint. Thus, the Court concludes Morrison has already pleaded his best case and granting leave to amend would be futile and cause needless delay.

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 19); **DENIES** Morrison's Request for Appointment of Counsel (ECF No. 21); and **DENIES** Morrison's Motion to Suspend Filing Fees (ECF No. 22). Accordingly, Morrison's claims for injunctive relief are **dismissed without prejudice as moot**; and Morrison's *Bivens* claims for compensatory damages against Defendants are **dismissed with prejudice** for failure to state a claim. Under Federal Rule of Civil Procedure 58(a), a final judgment will issue separately.

**SO ORDERED** this **30th day** of **June, 2021.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE